UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TUAN ANH LE,<br><br>   Plaintiff,<br><br>  v.<br><br>BANK OF NEW YORK MELLON, et al.,<br><br>   Defendants. | Case No.  14-cv-01949-KAW<br><br>ORDER DENYING DEFENDANT BANK OF AMERICA'S MOTION TO DISMISS<br><br>Dkt. No. 6 |

  May 27, 2014, Defendant Bank of America, N.A. filed a motion to dismiss Plaintiff Tuan Anh Le's first, second, and seventh causes of action for breach of contract in connection with an alleged loan modification agreement. (Def.'s Mot., Dkt. No. 6.)

  Upon review of the moving papers, the Court finds this matter appropriate for resolution without further briefing or oral argument pursuant to Civil Local Rule 7-1(b), and denies Bank of America's motion to dismiss.

## I. BACKGROUND

  On February 9, 2006, Plaintiff Tuan Anh Le refinanced his mortgage loan, secured by a deed of trust, with America's Wholesale Lender for the Subject Property located at San Francisco, California. (Compl., Dkt. No. 1 ¶ 11.)  Thereafter, Defendant Bank of America ("BOA") became the lender of Plaintiff's mortgage loan. *Id.*  Then, in June 2011, America's Wholesale Lender assigned all beneficial interest under the Deed of Trust to Defendant Bank of New York Mellon ("BONY"), at which point Plaintiff alleges that BOA remained his servicer. *Id.*

  On or around August 29, 2009, BOA sent Plaintiff a letter which stated that he was eligible for a loan modification, and instructed him to sign and date the enclosed modification document in the presence of a notary and to send it to BOA no later than September 28, 2009. (Compl. ¶ 12.)

1   On September 3, 2009, Plaintiff signed and dated the Loan Modification Agreement

2   ("Agreement") in the presence of a notary and sent the signed Agreement to BOA using the

3   enclosed address label. (Compl. ¶ 13, Ex. A.)  Pursuant to the Agreement, Plaintiff would make

4   monthly, interest-only payments of $3,825.08 beginning on November 1, 2009 until October 1,

5   2019, at which point Plaintiff would be required to make principal and interest payments. (Compl.

6   ¶ 13.)  In addition, the Agreement established an interest rate of 4.625% from October 1, 2009

7   until September 30, 2014, and increased the unpaid principal balance to $803,467.44, which

8   consisted of the original principal balance and any past due principal payments, interest, fees

9   and/or costs. *Id.*

10   Thereafter, Plaintiff began making loan payments according to the terms of the Agreement,

11   in full each month. (Compl. ¶14.) From October 2009 to January 2010, Plaintiff submitted

12   monthly payments pursuant to the Agreement.  *Id.* On or around October 29, 2009, BOA sent

13   Plaintiff a monthly statement that stated that Plaintiff's loan was past due for $30,659.84. *Id.*  On

14   or around December 31, 2009, BOA sent Plaintiff a monthly statement which stated that

15   Plaintiff's interest-only payment was $4,401.82. *Id.*  On or around January 4, 2010, Plaintiff

16   submitted a payment of $3,825.08, along with a letter referring to the payment amount in the

17   Agreement. *Id.*

18   On April 26, 2011, BOA returned Plaintiff's January 2010 payment to Plaintiff along with

19   a letter that stated that it was returning the funds, because Plaintiff's payment was $4,504.84, and

20   he only paid $3,825.08. (Compl. ¶ 15.)  This was more than one year after the payment was made.

21   *Id.*

22   In response, Plaintiff applied for another loan modification. (Compl. ¶ 16.)  During the

23   application process, Defendant repeatedly requested documents in support of the loan modification

24   application that Plaintiff had already submitted. *Id.*  BOA never issued a determination on

25   Plaintiff's loan modification application. *Id.*

26   On May 1, 2012, the servicing on Plaintiff's mortgage loan was transferred from BOA to

27   Defendant Select Portfolio Servicing, Inc. ("SPS"). (Compl. ¶ 17.)  Upon learning of the National

28   Mortgage Settlement, Plaintiff applied for other loan modifications with SPS. (Compl. ¶¶ 18-22.)

On December 19, 2013, Defendants BONY and SPS recorded a Notice of Default ("NOD") with the San Francisco County Recorder's Office. (Def.'s Req. for Judicial Notice, "RJN," Dkt. No. 8, Ex. C.) According to the NOD, Plaintiff was allegedly in default as payment has not been made on the "installments of principal and interest which became due on 1/1/2010, and all subsequent installments of principal and interest through the date of this Notice...." (Compl. ¶ 23; RJN, Ex. C.) The amount of alleged arrears was $223,546.90. (RJN, Ex. C.)

In late January 2014, the San Francisco Housing Development Corporation ("SFHDC") submitted a new loan modification on Plaintiff's behalf to SPS. (Compl. ¶ 24.) Thereafter, SPS requested additional documents, which Plaintiff provided, and confirmed on April 1, 2014 that Plaintiff's loan application was complete. (Compl. ¶¶ 25-26.)

On April 9, 2014, SPS and BONY recorded a Notice of Trustee's Sale with a scheduled sale date of May 5, 2014. (Compl. ¶ 27; RJN, Ex. D.)

On April 28, 2014, Plaintiff filed this action in federal court alleging seven causes of action against BOA, BONY, and SPS: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Violation of Cal. Civ. Code § 2924.17; (4) Violation of Cal. Civ. Code § 2924.10; (5) Violation of Cal. Civ. Code § 2923.6; (6) Violation of Cal. Civ. Code § 2923.7; and (7) Unfair Business Practices - Violation of Business and Professions Code § 17200 *et. seq*. Only the first, second, and seventh causes of action are against BOA.

On May 27, 2014, BOA filed a motion to dismiss the complaint asserting that Plaintiff's claims fail as a matter of law because he did not enter into a contract with BOA. (Def.'s Mot. at 1.) On June 10, 2014, Plaintiff filed his opposition. (Pl.'s Opp'n, Dkt. No. 14.) On June 11, 2014, BOA filed its reply. (Def.'s Reply, Dkt. No. 15.)

## II.   LEGAL STANDARD

### A.   Motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

3

1    In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

**B.    Request for Judicial Notice**

As a general rule, a district court may not consider any material beyond the pleadings in ruling on a 12(b)(6) motion to dismiss for failure to state a claim. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001). A district court may take notice of facts not subject to reasonable

4

dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b); *United States v. Bernal–Obeso,* 989 F.2d 331, 333 (9th Cir.1993). "[A] court may take judicial notice of 'matters of public record,'" *Lee*, 250 F.3d at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### III.   DISCUSSION

#### A.   Request for Judicial Notice

As a preliminary matter, BOA asks that the Court take judicial notice of four documents in support of its motion to dismiss. (Req. for Judicial Not., "RJN," Dkt. No. 8.) The documents are purportedly true and correct copies of: A) a Deed of Trust, dated February 9, 2006, and recorded with the San Francisco County Recorder's Office on February 26, 2006; B) Assignment of Deed of Trust, dated May 3, 2011, and recorded with the San Francisco County Recorder's Office on June 13, 2011; C) Notice of Default and Election to Sell Under Deed of Trust, dated December 17, 2013, and accompanying Notice of Default Declaration issued by Jillian Jones-Peacock on November 28, 2013, and recorded with the San Francisco County Recorder's Office on December 19, 2013; and D) Notice of Trustee's Sale issued by Quality Loan Service Corp., dated April 8, 2014, and recorded with the San Francisco County Recorder's Office on April 9, 2014.

Plaintiff did not file an opposition to Defendant's request for judicial notice, and so Plaintiff is not deemed to dispute the authenticity of any of the exhibits. All exhibits are true and correct copies of official public records, whose authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. See Fed. R. Evid. 201(b).

Accordingly, the Court GRANTS Defendant's request for judicial notice.

**B.   Motion to Dismiss**

Defendant claims that it did not have a contract with Plaintiff, and, even if it did, Plaintiff has failed to allege damages. (Def.'s Mot. at 1.)

### i.   Whether Plaintiff had a contract with Bank of America

Defendant claims that it did not enter into a contract with Plaintiff. (Def.'s Mot. at 5.) The Loan Modification Agreement ("Agreement") between Plaintiff and BOA, however, is a contract that altered the terms of Plaintiff's residential mortgage loan by requiring that he make interest-only payments of $3,825.08 from November 1, 2009 until October 1, 2019, when he would be required to remit principal and interest payments. (Compl. ¶ 13.)  Thus, Plaintiff alleges sufficient facts to show that he had a contract with BOA.

### ii.   Plaintiff's has sufficiently pled damages to support his claims against Bank of America.

Defendant further contends that, even if there was a contract, Plaintiff cannot show damages. (Def.'s Mot. at 7-9.)  To the contrary, had BOA not breached the alleged Agreement, Plaintiff would have only been required to make interest-only payments of $3,825.08 from November 1, 2009 until October 1, 2019. (Pl.'s Opp'n at 5.)  Second, the Notice of Default specifically states that Plaintiff defaulted on principal and interest which became due on January 1, 2010. (RJN, Ex. C.)  In the absence of breach, Plaintiff's January 2010 payment would have satisfied his monthly payment obligation under the Agreement, and he would not be in default as of January 1, 2010 despite the fact that he continued to make payments. (Pl.'s Opp'n at 7.)

Defendant contends that Plaintiff fails to plead any facts regarding whether he contacted BOA regarding the alleged error. (Def.'s Mot. at 8.) This statement is not accurate, as the complaint alleges that, on January 4, 2010, Plaintiff submitted a payment of $3,825.08 along with a letter referring to the payment amount in the Agreement. (Compl. ¶ 14.)  Plaintiff further contends that Defendant waited until April 26, 2011 to notify him by letter that his January 2010 payment was being returned because he owed an additional $679.76 to satisfy his monthly payment of $4504.84. (Compl. ¶ 15.)

6

BOA contends that, if anything, Plaintiff's damages are limited to $4,504.84, "representing the purported payment that Plaintiff claims was improperly returned to him." (Def.'s Mot. at 8.) The Court is not persuaded. First, the modified loan terms provided Plaintiff with set monthly payments until 2019 and eliminated the uncertainty regarding the potential unaffordability that is characteristic of adjustable rate mortgages. Second, Plaintiff alleges that BOA's breach of contract has resulted in monetary damages, including increased late fees and arrears, and damage to his credit. (Compl. ¶ 37.) In addition, BOA notes that Plaintiff is more than $223,546.90 in default. (Def.'s Mot. at 9; RJN, Ex. C.) Any argument concerning the amount currently in default is unavailing, because Plaintiff's arrears were undoubtedly multiplied by BOA's alleged breach of contract, because the lower payments would have resulted in fewer arrears and may have prevented Plaintiff's pending foreclosure.[1] In addition, it is likely that Plaintiff's being in arrears adversely affected his credit score and hindered his other efforts to pursue loan modification.

Accordingly, the Court finds that Plaintiff has sufficiently pleaded breach of contract claims against Bank of America to survive a motion to dismiss pursuant to Rule 12(b)(6).

### IV.  CONCLUSION

In light of the above, Defendant Bank of America's request for judicial notice is GRANTED.

Bank of America's motion to dismiss is DENIED. Defendant shall file its answer within 14 days of this order.

IT IS SO ORDERED.

Dated: July 15, 2014

KANDIS A. WESTMORE
United States Magistrate Judge

---

[1] The $679.76 difference, between the Agreement's interest-only payments versus the statement amount, multiplied by the number of months of interest-only payments far exceeds the $75,000 amount in controversy requirement for diversity cases.