1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7   TUAN ANH LE,                              Case No.  14-cv-01949-KAW

                 Plaintiff,
8                                             **ORDER GRANTING DEFENDANTS'**
                                              **MOTION FOR SUMMARY JUDGMENT**
9        v.
                                              Re: Dkt. No. 75
10  BANK OF NEW YORK MELLON, et al.,

                 Defendants.
11

12          On April 28, 2014, Plaintiff Tuan Anh Le filed this action against Defendants Select

13  Portfolio Servicing, Inc. ("SPS"), Bank of New York Mellon ("BONY"), and Bank of America

14  alleging breach of contract and violations of the California Homeowner Bill of Rights.  After the

15  dismissal of Bank of America, Plaintiff amended his complaint to allege six causes of action

16  against SPS and BONY (collectively "Defendants").  Before the Court is Defendants' motion for

17  summary judgment.  (Defs.' Mot., Dkt. No. 75.)

18          On December 17, 2015, the Court held a hearing, and after careful consideration of the

19  parties' arguments, and moving papers, and for the reasons set forth below, the Court GRANTS

20  Defendants' Motion for Summary Judgment.

21                              **I.     BACKGROUND**

22          On February 9, 2006, Plaintiff  Tuan Anh Le refinanced his mortgage loan, secured by a

23  deed of trust, with America's Wholesale Lender for the Subject Property located at San Francisco,

24  California.  (Pl.'s Req. for Judicial Not., "RJN," Dkt. No. 79-3, Ex. 1.)  Thereafter, Defendant

25  Bank of America became the lender of Plaintiff's mortgage loan. (Decl. of Tuan Anh Le, "Le

26  Decl.," Dkt. No. 79-1 ¶ 3.)

27          In August 2009, Plaintiff received a letter from Bank of America approving him for a loan

28  modification, which would allow him to make interest-only payments until 2019. (Le Decl. ¶ 4,

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Ex. 1.)  Pursuant to the Agreement, Plaintiff would make monthly, interest-only payments of

2  $3,825.08 beginning on November 1, 2009 until October 1, 2019, at which point Plaintiff would

3  be required to make principal and interest payments. (Le Decl. ¶ 5.)  On September 3, 2009,

4  Plaintiff signed and dated the Loan Modification Agreement in the presence of a notary and sent

5  the signed Agreement to Bank of America using the enclosed address label. (Le Decl. ¶ 5, Ex. 2.)

6  In October 2009, Plaintiff began making the interest-only payments pursuant to the agreement. (Le

7  Decl. ¶ 6.)  Thereafter, in December 2009, Plaintiff was sent a statement that his loan was past

8  due, and that his monthly payment was higher than the amount remitted. *Id.*

9      On or around January 4, 2010, Plaintiff submitted a payment in the amount of $3,825.08,

10  but that payment was returned in April 2011, because Bank of America stated that it did not

11  represent a full loan payment. (Le Decl. ¶¶ 6-7, Ex. 5.)  Ultimately, Plaintiff submitted a new loan

12  modification application to Bank of America. (Le Decl. ¶ 8.)

13      Plaintiff stopped making loan payments in January 2011,[1] and has not made any payments

14  since. (Dep. of Tuan Anh Le, "Defs.' Le Dep.," Decl. of Carissa Beecham, "Beecham Decl.," Ex.

15  F at 48:1-25; Pl.'s Resp. to Req. for Admissions, Set One, "RFA," Beecham Decl., Dkt. No. 75-1,

16  Ex. D, Nos. 7-11.)  Plaintiff testified that he stopped making payments, so that he could obtain a

17  loan modification. (Defs.' Le Dep. at 47:1-25.)

18      On June 13, 2011, America's Wholesale Lender assigned all beneficial interest under the

19  Deed of Trust to Defendant Bank of New York Mellon ("BONY"). (RJN, Ex. 2.)

20      On May 1, 2012, the servicing of Plaintiff's mortgage loan was transferred from Bank of

21  America to Defendant Select Portfolio Servicing, Inc. ("SPS"). (Decl. of Brett Cline, "Cline

22  Decl.," ¶ 6.)  Bank of America did not issue a determination on Plaintiff's loan modification

23  application prior to the transfer. (Le Decl. ¶ 8.)  SPS also did not provide a determination on the

24  loan modification application previously submitted to Bank of America. (Le Decl. ¶ 9.)

25      On May 10, 2012, SPS sent Plaintiff a "Validation of Debt Notice" pursuant to the state

26  and federal Fair Debt Collections Practices Acts, which stated that he owed an outstanding balance

27

28  _____
[1] At the hearing, Plaintiff conceded that he had not made any payments since December 2009.

2

of $828,786.43 on his residential mortgage loan, and informing him that he had 30 days from receipt to contest the debt in writing, lest it be assumed valid. (Cline Decl. ¶ 8, Ex. B.)  Plaintiff did not dispute the debt pursuant to the terms of the Notice. (Defs.' Le Dep. 79:12-80:14; Cline Decl. ¶ 9.)

On May 31, 2012, SPS sent Plaintiff a letter inviting him to apply for a loan modification. (Cline Decl. ¶ 10, Ex. C.)  There is no record that Plaintiff responded. (Cline Decl. ¶ 11.)  On July 10, 2012, SPS sent Plaintiff another letter requesting documents needed to begin review of his loan. (Cline Decl. ¶ 12, Ex. D.)  On August 6, 2012, SPS sent Plaintiff a notice stating that he met "the criteria to apply for a new modification program" related to the National Mortgage Settlement. (Le Decl., Ex. 6.)  The letter did not guarantee a modification, and explicitly stated that "if you qualify for this modification, any past due late fees will be waived, interest and advances that we paid on your behalf will be added to your principal balance, and your loan will be brought up to date." *Id.*  The letter included a checklist of required documents, with a submission date of September 5, 2012. *Id.*

On or about September 5, 2012, Plaintiff submitted a tax form and a "Proof of Income" document to SPS. (Cline Decl. ¶ 13; Le Decl. ¶ 11.)  On September 10, 2012, SPS discussed the submission with Plaintiff, and informed him that the submission was incomplete. (Cline Decl. ¶ 13; Contact History Report, Cline Decl., Ex. A at 60.)  Plaintiff concedes that SPS requested additional information in support of his application. (Le Decl. ¶ 11.)  SPS did not receive any additional information, and the phone number provided by Plaintiff was disconnected, such that SPS did not reestablish phone contact until June 2013. (Contact History Report at 55-57; Cline Decl. ¶ 14.)

Plaintiff was assigned various single points of contact ("SPOC") by SPS pursuant to the Homeowner Bill of Rights.  On February 14, 2013, SPS assigned relationship manager Jared Johnson to Plaintiff's loan. (Le Decl. ¶ 12, Ex. 7.)  On April 9, 2013, SPS changed Plaintiff's assigned relationship manager to Jacquelyn Collins. (Le Decl. ¶ 12, Ex. 8.)  Plaintiff contacted SPS, but was unable to reach his assigned relationship managers. (Le Decl. ¶ 12.)  Plaintiff was able, however, to discuss his loan and modification options with other SPS personnel. (*See*

United States District Court
Northern District of California

1    Contact History Report at 51-55; Le Decl. ¶ 16.)  Plaintiff contends that the representatives

2    provided him with conflicting information. (Le Decl. ¶ 16.)

3        On May 30, 2013, SPS sent Plaintiff another loan modification solicitation letter. (Le Decl.

4    ¶ 13, Ex. 9.)  The letter stated that "[i]f you qualify for this modification, any past due late fees

5    will be waived, interest and advances that we paid on your behalf will be added to your principal

6    balance, principal reduction will be applied and your loan will be brought up to date." *Id.* It did not

7    guarantee a loan modification. *Id.*  On June 17, 2013, Plaintiff received another loan modification

8    solicitation letter from SPS. (Le Decl. ¶ 13, Ex. 10.)

9        On June 18, 2013, with the assistance of Christine Nguyen from Asian, Inc., Plaintiff

10   resubmitted the documents for his loan modification application to SPS. (Le Decl. ¶ 14.)

11       On June 19, 2013, SPS sent Plaintiff a notice acknowledging that he had begun the home

12   loan modification process, and that he would be notified by letter if his application was missing

13   any documents. (Le Decl., Ex. 11.)

14       On or around July 8, 2013, the requested paystubs and proof of occupancy were submitted

15   to SPS. (Contact History Report at 53.)  The paystubs provided did not provide the information

16   required, which was conveyed to Christine Nguyen. (7/12/13 entry, Contact History Report at 53.)

17   The SPS representative also requested new copies of the paystubs, which Plaintiff submitted.

18   (Contract History Report at 51.)

19       Plaintiff was sent letters on June 24, July 24,[2] and July 26, 2013, indicating that necessary

20   documents were still missing and that the documents needed to be submitted by July 24, August 8,

21   and August 10, 2013. (Cline Decl. ¶¶ 15-20, Exs. E, G.)  Plaintiff did not submit the requested

22   documents by those deadlines. (Cline Decl. ¶21.)

23       On July 31, 2013, SPS, via a new assigned relationship manager Jerry Stanley, informed

24   Plaintiff that his loan modification application was being evaluated. (Le Decl. ¶ 17, Ex. 14.) On

25   August 16, 2013, SPS issued a letter stating that Plaintiff's loan was not eligible for the new

26   principal forgiveness modification program based on the monthly income of $5,382.36. (Le Decl.

27

28   _____
     [2] Defendants erroneously filed another letter as Exhibit F.

4

¶ 18; Ex. 15.)  The letter provided Plaintiff with 30 days to contact SPS to "provide information to show why our determination of eligibility was in error." (Le Decl., Ex. 15 at 1.)  The letter also stated that there may be other modification options. *Id*.

As Plaintiff's income had increased from the amount used in the loan modification calculation, Plaintiff contacted SPS with the help of Asian, Inc., and was informed that he may be evaluated under different loan modification programs. (Le Decl. ¶ 18.)  On or around October 16, 2013, SPS sent information regarding the Home Affordable Modification Program ("HAMP"), along with the application and instructions to submit the application by no later than November 15, 2013. (Le Decl. ¶ 19, Ex. 16.)  Plaintiff, with the assistance of the National Asian American Coalition ("NAAC"), submitted a new loan modification application that reflected the change in his income. (Le Decl. ¶ 19.)

On October 31, 2013, SPS denied Plaintiff's loan modification application on the grounds that his loan did not meet one or more of the HAMP eligibility criteria. (Le Decl. ¶ 20, Ex. 17.)  Specifically, the letter stated that the unpaid principal balance was higher than the program limit. *Id*.  It also provided that "[y]ou have 30 calendar days from the date of this notice to contact SPS to discuss the reason for non-approval for a HAMP modification or to discuss alternative loss mitigation options that may be available to you." *Id*.  With the assistance of NAAC, Plaintiff contacted SPS and was informed by a SPS representative that although his loan was over the HAMP program limit, the determination on the loan modification application would be reviewed under alternate loan modification programs. (Le Decl. ¶ 21; Contact History Report at 45.)  The SPS representative informed Plaintiff's representative on both October 31 and November 6, 2013 that he would be required to submit a substantial down payment and the necessary financial information to qualify for any modifications. (Contact History Report at 45.)

On or around November 12, 2013, Plaintiff submitted an updated Proof of Income Statement purportedly as an appeal of the denial of his modification application. (11/13/2013 entry, Contact History Report at 44; Le Decl. ¶ 21.)   Plaintiff testified that this updated information showed additional income not previously disclosed to SPS concerning rental income that could be used to help pay a modified mortgage loan.  (FAC ¶ 20; Defs.' Le Depo. 101:17-

103:16.)  Plaintiff's update did not address the issue of a down payment or the fact that his application was denied because the unpaid principal balance on the loan was too high. (Contact History Report at 44.)

Plaintiff contends that when he contacted SPS with the assistance of NAAC to follow up on his submission on or around November 13, 2013, he was informed by SPS representative Triton Green that his file was already closed. (Le Decl. ¶ 22.)  This was purportedly confirmed by another SPS representative, Reza Shavani, on November 14, 2013, who stated that although SPS received the profit and loss statement showing a change in income, Plaintiff's file was already closed.  *Id.*  Plaintiff argues that he has not received a decision on his appeal of the denial of the loan modification application. *Id.*

On December 10, 2013, Plaintiff called SPS and spoke with representative Tammy Remelyn, who confirmed that Plaintiff's loan could be reviewed under the National Mortgage Settlement ("NMS") loan modification program. (Le Decl. ¶ 23.)  In addition, on December 20, 2013, SPS allegedly informed Plaintiff that he "may re-submit your completed documents in lieu of your appeal by 01/19/2014, and SPS will re-evaluate it." *Id.*

On December 19, 2013, a notice of default was recorded on the Property.  (Cline Dec. ¶ 28, Ex. K; RJN, Ex. 3.)  According to the NOD, Plaintiff was allegedly in default as payment had not been made on the "installments of principal and interest which became due on 1/1/2010, and all subsequent installments of principal and interest through the date of this Notice…." (RJN, Ex. 3.)

In late January 2014, the San Francisco Housing Development Corporation ("SFHDC"), on Plaintiff's behalf, submitted a new loan modification application to SPS, along with a new profit and loss statement. (Le Decl. ¶ 25.)  On February 3, 2014, SPS confirmed receipt of the initial application and requested additional documents by March 5, 2014. (Le Decl. ¶ 26, Ex. 19.)  Plaintiff allegedly submitted all of the requested documents.  (Le Decl. ¶ 26.)  On March 3, 2014, SFHDC contacted SPS to inquire about the status of Plaintiff's application and was informed that SPS was missing a hardship letter from Plaintiff. (Contact History Report at 32.)  Plaintiff

United States District Court
Northern District of California

United States District Court
Northern District of California

1   submitted a hardship letter to SPS, which was received on March 4, 2014. (Le Decl. ¶ 26; Contact

2   History Report at 32.)

3          On April 1, 2014, Defendant SPS confirmed that it had received the lease agreement and

4   tax returns, and was "[a]dvised [Plaintiff] that nothing else [was] needed at this time." (Le Decl. ¶

5   27; Contact History Report at 27.)

6          On April 9, 2014, Defendants caused to be recorded a Notice of Trustee's Sale ("NOS")

7   for the Subject Property. (RJN, Ex. 4.)  On April 14, 2014, SPS communicated to Plaintiff's

8   SFHDC's representative that the section of the hardship affidavit pertaining to rental income was

9   missing. (Defs.' Le Depo. 113:5-16; Contact History Report at 24.)

10          On April 28, 2014, Plaintiff filed the instant action.

11          On May 28, 2014, SPS notified Plaintiff that it had received a complete "Assistance

12   Review Application" and informed him that while the foreclosure process will continue during the

13   evaluation, no sale would be conducted during that time. (Cline Decl. ¶ 34, Ex. N.)

14          On July 8, 2014, Plaintiff was notified that some required documents were missing. (Cline

15   Decl. ¶ 36, Ex. O.)  On July 18, 2014, the parties stipulated to stay the instant action until October

16   17, 2014, and agreed that no sale of the Subject Property could be conducted until at least two

17   week after the stay terminates, while the parties engaged in informal settlement negotiations. (Le

18   Decl. ¶ 29; Beecham Decl. ¶ 3, Ex. B.)  The stipulation was entered on July 25, 2014. (Dkt. No.

19   22.)  On August 11, 2014, SPS confirmed receipt of a complete Assistance Review Application.

20   (Cline Decl. ¶ 37, Ex. P.)

21          On August 14, 2014, SPS sent Plaintiff a written denial of his application, finding there

22   were no loss mitigation or home retention options for which Plaintiff was approved. (Cline Decl.

23   ¶ 38, Ex. Q; RFA Nos. 1-2.)  On September 11, 2014, Plaintiff submitted an appeal of the denial

24   of his application. (RFA No. 4.)  On December 11, 2014, SPS denied, in writing, Plaintiff's

25   appeal. (Cline Dec. ¶ 39, Ex. R; *see also* RFA No. 6.)  Specifically, SPS's correspondence

26   explained that the Net Present Value of his loan did not permit a modification of the loan in the

27   best interest of its investor.  (Cline Dec. ¶ 39, Ex. R.)

28

1       On March 25, 2015, Plaintiff filed a voluntary Chapter 13 petition with the United States

2   Bankruptcy Court for the Northern District of California to prevent a trustee's sale. *In re Tuan Anh*

3   *Le*, No. 15-30361 (N.D. Cal.); Le Decl. ¶ 30.

4       On October 28, 2015, Defendants filed a motion for summary judgment. (Defs.' Mot., Dkt.

5   No. 75.)  On November 12, 2015, Plaintiff filed his opposition. (Pl.'s Opp'n, Dkt. No. 79.)  On

6   November 19, 2015, Defendants filed a reply and evidentiary objections to Plaintiff's declaration.

7   (Defs.' Reply, Dkt. No. 80; Defs.' Obj., Dkt. No. 80-1.)

8                          **II.      LEGAL STANDARD**

9       **A.      Motion for Summary Judgment**

10      A party may move for summary judgment on a "claim or defense" or "part of... a claim or

11  defense." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when, after adequate

12  discovery, there is no genuine issue as to material facts and the moving party is entitled to

13  judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

14  Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,*

15  477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient

16  evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

17      A party seeking summary judgment bears the initial burden of informing the court of the

18  basis for its motion, and of identifying those portions of the pleadings and discovery responses

19  that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where

20  the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no

21  reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City*

22  *of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

23      On an issue where the nonmoving party will bear the burden of proof at trial, it may

24  discharge its burden of production by either (1) by "produc[ing] evidence negating an essential

25  element of the nonmoving party's case" or (2) after suitable discovery "show[ing] that the

26  nonmoving party does not have enough evidence of an essential element of its claim or defense to

27  discharge its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz*

28  *Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. 324-25.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Once the moving party meets its initial burden, the opposing party must then set forth

2  specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See*

3  Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250.  "A party opposing summary judgment may not

4  simply question the credibility of the movant to foreclose summary judgment. *Anderson,* 477 U.S.

5  at 254.  "Instead, the non-moving party must go beyond the pleadings and by its own evidence set

6  forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*,

7  247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted).  The non-moving party must

8  produce "specific evidence, through affidavits or admissible discovery material, to show that the

9  dispute exists."  *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).  Conclusory or

10  speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of

11  material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics*

12  *Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

13    In deciding a motion for summary judgment, a court must view the evidence in the light

14  most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,*

15  477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

16    **B.    Request for Judicial Notice**

17    A district court may take notice of facts not subject to reasonable dispute that are "capable

18  of accurate and ready determination by resort to sources whose accuracy cannot reasonably be

19  questioned." Fed. R. Evid. 201(b); *United States v. Bernal–Obeso,* 989 F.2d 331, 333 (9th Cir.

20  1993).  "[A] court may take judicial notice of 'matters of public record,'" *Lee*, 250 F.3d at 689

21  (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider

22  "documents whose contents are alleged in a complaint and whose authenticity no party questions,

23  but which are not physically attached to the pleading."  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th

24  Cir. 1994), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th

25  Cir. 2002).  The court need not accept as true allegations that contradict facts which may be

26  judicially noticed.  *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir.

27  1987).

28  ///

United States District Court
Northern District of California

### III.   DISCUSSION

**A.   Requests for Judicial Notice**

As a preliminary matter, Plaintiff asks that the Court take judicial notice of four documents in support of his opposition to the motion for summary judgment.  (Pl.'s Req. for Judicial Not., "RJN," Dkt. No. 79-3.)  The documents are purportedly true and correct copies of: 1) a Deed of Trust, dated February 9, 2006, and recorded with the San Francisco County Recorder's Office on February 26, 2006; 2) Assignment of Deed of Trust, dated May 3, 2011, and recorded with the San Francisco County Recorder's Office on June 13, 2011; 3) Notice of Default and Election to Sell Under Deed of Trust, dated December 17, 2013, and accompanying Notice of Default Declaration issued by Jillian Jones-Peacock on November 28, 2013, and recorded with the San Francisco County Recorder's Office on December 19, 2013; and 4) Notice of Trustee's Sale issued by Quality Loan Service Corp., dated April 8, 2014, and recorded with the San Francisco County Recorder's Office on April 9, 2014.

Defendants did not file an opposition to Plaintiff's request for judicial notice, and so Defendants are not deemed to dispute the authenticity of any of the exhibits.  All exhibits are true and correct copies of official public records, whose authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b).

Accordingly, the Court GRANTS Plaintiff's request for judicial notice.

**B.   Motion for Summary Judgment**

Defendants seek summary judgment as to all remaining claims on the grounds that they did not violate HBOR, but even if they did, any violations were legally cured by SPS's stay of litigation and subsequent review and written determination on Plaintiff's August 2014 loan modification application. (Defs.' Mot. at 3.)  Moreover, Defendants argue that there is no legal basis for the negligence claim. *Id.*

**i.   Homeowner Bill of Rights Claims**

Plaintiff alleges four HBOR causes of action for violations of California Civil Code §§ 2924.17, 2923.55, 2923.6, and 2923.7.

10

a.   Violation of California Civil Code § 2924.17

Plaintiff's first cause of action alleges that Defendants violated § 2924.17(b) by recording a notice of default ("NOD") on December 19, 2013 that was inaccurate, and without having reviewed competent and reliable evidence to substantiate Plaintiff's default.  (FAC ¶ 30.) California Civil Code § 2924.17 provides that before recording or filing a NOD, a notice of sale ("NOS"), as well as other specified documents, "a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information." Cal. Civ. Code § 2924.17(b).

Defendants argue that SPS relied on competent evidence to substantiate the default, including the fact that Plaintiff did not respond to the Validation of Debt Notice sent when the loan was boarded with SPS in May 2012. (Defs.' Mot. at 12.)  While not dispositive, the Validation of Debt Notice, at a minimum, put Plaintiff on notice that he owed significant arrears. Plaintiff does not allege that he made any payments after the January 4, 2010 payment, which was returned. (Le Decl. ¶¶ 6-7.)  Furthermore, Plaintiff admits to not having made any mortgage payments since 2010. (*See id.*; RFA Nos. 7-11.)

In opposition, Plaintiff argues that the NOD erroneously stated that Plaintiff had not made payments as of January 1, 2010, because he had made a payment to Bank of America on January 4, 2010. (Pl.'s Opp'n at 16.)  The January 2010 payment was returned to him on April 26, 2011, because it was not a full monthly payment. (Le Decl. ¶ 7, Ex. 5.)  Plaintiff contends that the failure to take this payment into account constitutes a failure to review competent and reliable evidence. (Pl.'s Opp'n at 16.)  This argument is unavailing.  Defendants' review occurred in 2013, long after the payment was returned by prior servicer Bank of America.  Therefore, the NOD is accurate insofar as it states that no payments had been credited as of January 1, 2010.

Accordingly, Plaintiff has not provided any evidence to create a triable issue as to whether SPS violated § 2924.17.  Consequently, the undisputed evidence shows that SPS complied with § 2924.17 before recording the NOD, and summary judgment is granted as to the first cause of action.

b.   Violation of California Civil Code § 2923.55

Plaintiff's second cause of action is for violation of California Civil Code § 2923.55, which provides that a servicer cannot record an NOD within 30 days of contacting the borrower in default about options to avoid foreclosure and must notify the defaulted borrower of Housing and Urban Development's toll-free contact number and the borrower's option to schedule a loss mitigation meeting within 14 days, if requested. Cal. Civ. Code §§ 2923.55(a)(2), (b)(2).

Defendants contend that the documents show that SPS's representative had a detailed telephone conversation with Plaintiff on July 24, 2013, wherein loan modification was discussed, Plaintiff was advised that he could schedule a loss mitigation meeting, and was given HUD's toll-free number. (Defs.' Mot. at 14; Contact History Report at 52.)  The NOD was filed on December 19, 2013, which was more than thirty days after Plaintiff was contacted.

Plaintiff does not address this cause of action in his opposition, and so has failed to set forth admissible evidence showing that there is a genuine issue of material fact.  Therefore, Defendants' motion for summary judgment is granted as to the second cause of action.

c.   Violation of California Civil Code § 2923.6

Plaintiff's third cause of action is for violation of California Civil Code § 2923.6, which prohibits dual tracking.  Section 2923.6(c) provides:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending . . . until . . . the mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period . . . has expired.

The statute further provides that "the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error." Cal. Civ. Code § 2923.6(d).

1.   Closing Loan Modification Review File

Plaintiff alleges that Defendants violated § 2923.6(d) by closing Plaintiff's loan modification review file on November 13, 2013, prior to the expiration of the appeal period. (Pl.'s

1   Opp'n at 10.) This, however, is not a statutory violation, as a borrower is only entitled to "at least

2   30 days from the date of the written denial to appeal the denial and to provide evidence that the

3   mortgage servicer's determination was in error." Cal. Civ. Code § 2923.6(d).  Defendants did not

4   take any of the actions prohibited by the statute between October 31, 2013, when the denial was

5   issued, and November 30, 2013, which was 30 days later.  Closing an administrative file is not

6   tantamount to recording a notice of default, particularly given that SPS was still communicating

7   with Plaintiff to identify other loss prevention alternatives. (*See generally* Contact History

8   Report.)

9                    2.   Recordation of the Notice of Default

10        Plaintiff also contends that the December 19, 2013 recordation of the notice of default

11  constitutes a § 2923.6(e)(2) violation, because it was recorded less than 15 days after the denial of

12  the appeal. (Pl.'s Opp'n at 10.)  The October 31, 2013 letter stated that Plaintiff's modification

13  application was denied because the unpaid principal balance was higher than the HAMP program

14  limit. (Le Decl. ¶ 20, Ex. 17.)  Defendants contend that Plaintiff did not appeal the denial, because

15  the "Proof of Income" document submitted on November 12, 2013 did not contest SPS's analysis

16  of information that it had at the time it denied his application under HAMP. (Defs.' Mot. at 14.)

17  The Court agrees. Even with additional income, Plaintiff failed to establish a proper basis for an

18  appeal, because the loan modification application was denied based on the high unpaid principal

19  balance at the time of the application. (Cline Decl., Ex. J.)  Thus, Plaintiff's claim to having

20  additional income after the denial does not mean that the denial, "based on the available

21  information at the time of its decision, was a 'determination [that] was in error.'" *McLaughlin v.*

22  *Aurora Loan Servs., LLC*, No. SACV 13-01653 JVS RN, 2015 WL 1926268, at *6 (C.D. Cal.

23  Apr. 28, 2015)(letter and updated financial worksheet providing new source of income were not an

24  appeal) (citing Cal. Civ.Code § 2923.6).  As a result, the submission of a "Proof of Income"

25  document did not constitute an appeal within the meaning of § 2923.6(e)(2).

26        Alternatively, Plaintiff appears to argue that the recordation of the NOD is a § 2923.6

27  violation, because Plaintiff's "Proof of Income" document submitted on November 12, 2013

28  constituted a new, complete application. (Pl.'s Opp'n at 11.)  Plaintiff does not provide any proof

United States District Court
Northern District of California

13

of what information the document contained.  Furthermore, that this would constitute a complete application is contradicted by the Request for Modification Assistance application submitted on January 30, 2014. (Cline Decl. ¶ 30, Ex. L.)  Moreover, this allegation is not made in the operative complaint, as Plaintiff only alleges that the appeal of the October 31, 2012 denial was pending when the notice of default was recorded. (FAC ¶¶ 53-54.)  Lastly, Plaintiff's declaration provides that, on December 10, 2013, he spoke with SPS representative Tammy Remelyn, who confirmed that he "could be reviewed under the NMS loan modification program." (Le Decl. ¶ 23.)  Thus, there is no dispute that Plaintiff did not have an application pending, let alone a complete application, when the NOD was recorded.

### 3. Recordation of Notice of Trustee's Sale

Plaintiff alleges that Defendants violated § 2923.6(c) by recording the NOS while Plaintiff's first lien loan modification application was pending. (FAC ¶¶ 55-59; Pl.'s Opp'n at 12.)  Specifically, on January 30, 2014, Plaintiff submitted a new loan modification application. (Le Decl. ¶ 25.)  Thereafter, Plaintiff submitted the additional documents as requested by SPS, and, on April 1, 2014, he was advised that SPS had received the lease agreement and tax returns, and "that nothing else was needed at [that] time." (Contact History Report at 27.) An entry on April 7, 2014, provides that the documents were received and the file was awaiting review.  (Contact History Report at 25.)  Plaintiff argues that this indicates that the application was complete. (Pl.'s Opp'n at 12-13.)

Defendants argue that Plaintiff's application was incomplete when the NOS was recorded on April 9, 2014, because he failed to complete Section 5 of his application, which seeks information regarding rental income. (Defs.' Mot. at 15; Contact History Report at 24.)  Pursuant to California Civil Code § 2923.6(h), an application is deemed complete "when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified. . . ." Cal. Civil Code § 2923.6(h).  According to Defendants' records, this deficiency was not noted in the Contact History Report until April 10, 2014, the day after the NOS was recorded.  In viewing the evidence in the light most favorable to the nonmoving party and drawing all justifiable inferences in his favor, the fact that Defendants' own records

1     indicate that the documents were received and the application was awaiting review as of April 7,

2     2014 suggests that the application was complete. (Contact History Report at 25, 27.)

3          In light of the foregoing, Defendants' motion for summary judgment as to the third cause

4     of action is denied only as to the allegation that the NOS was recorded while a completed

5     modification application was pending.  Defendants' motion, however, is granted to the extent that

6     the closing of Plaintiff's file and the recordation of the NOD are not HBOR violations.

7                    d.   Violation of California Civil Code § 2923.7

8          Plaintiff's fourth cause of action is for violation of California Civil Code § 2923.7, which

9     requires the lender to assign a Single Point of Contact ("SPOC") when a borrower requests a

10    foreclosure prevention alternative. Cal. Civ. Code § 2923.7(a).  Generally, Plaintiff alleges that he

11    was assigned SPOCs by SPS, but was repeatedly unable to reach his assigned relationship

12    manager, and was told that he could speak with any SPS representative. (FAC ¶ 64.)  Plaintiff

13    contends that the SPS representatives gave him conflicting information regarding the documents

14    required for the loan modification process. *Id.*

15         As an initial matter, Defendants contend that Plaintiff's operative complaint demonstrates

16    that he never requested a SPOC, which is fatal to his claim. (Defs.' Mot. at 16.)  Defendants are

17    mistaken.  Section 2924.7(a) states that, "[u]pon request from a borrower who requests a

18    foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of

19    contact and provide to the borrower one or more direct means of communication with the single

20    point of contact. Cal. Civ. Code § 2923.7(a).  Courts in this district have interpreted this to require

21    the servicer to assign a SPOC when a borrower requests a foreclosure prevention alternative,

22    rather than requiring a borrower to specifically request a SPOC. *Penermon v. Wells Fargo Bank,*

23    *N.A.*, 47 F. Supp. 3d 982, 1000 (N.D. Cal. 2014); *Johnson v. PNC Mortgage*, 80 F. Supp. 3d 980,

24    986 (N.D. Cal. 2015); *Rockridge Trust v. Wells Fargo NA*, No. 13-CV-01457-JCS, 2014 WL

25    688124, at *23 (N.D. Cal. Feb. 19, 2014); *Mungai v. Wells Fargo Bank*, No. C-14-00289 DMR,

26    2014 WL 2508090, at *9 (N.D. Cal. June 3, 2014).  Here, Plaintiff clearly contacted SPS

27    repeatedly to request foreclosure alternatives, so he was entitled to a SPOC.

28         Further, Defendants contend that they satisfied the SPOC requirement by assigning

United States District Court
Northern District of California

15

1  individual SPOCs. (Defs.' Mot. at 16.)  Subsection (e) defines a SPOC as

> an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in subdivisions (b) to (d), inclusive. The mortgage servicer shall ensure that each member of the team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process.

Cal. Civ. Code § 2923.7(e).  Plaintiff contends that the "assigned single points of contact failed to communicate with Plaintiff regarding his loan modification application, including coordinating the receipt of all documents and having access to current information and personnel sufficient to timely, accurately, and adequately inform the Plaintiff of the status of his application." (Pl.'s Opp'n at 15.)  The Court agrees.  While Plaintiff had assigned SPOCs, the evidence does not definitively resolve the factual dispute concerning whether the SPOCs, or other SPS representatives who answered the hotline, provided accurate information.  To be sure, on April 1, 2014, an SPS representative informed Plaintiff that he did not have to provide any additional documents, and a NOS was recorded eight days later. (Le Decl. ¶ 27; Contact History Report at 27.)  This suggests that the representative with whom he spoke either did not have access to current information or did not "[h]av[e] access to individuals with the ability and authority to stop foreclosure proceedings when necessary." *See* Cal. Civ. Code § 2923.7(b)(3),(5).

At the hearing, Defendants argued for the first time that all SPS representatives constituted a "team" under the statute.  To the contrary, the statute provides that the SPOC can be "an individual **or** a team of personnel." Cal. Civ. Code § 2923.7(e)(emphasis added).  Here, SPS chose to assign an individual SPOC, a decision made clear by the fact that they twice reassigned Plaintiff to different individual SPOCs.  Furthermore, subsection (a) requires the servicer to "provide to the borrower one or more direct means of communication with the single point of contact." Cal. Civ. Code § 2923.7(a).  There is no indication that SPS provided Plaintiff with contact information for the purported team, other than giving him a hotline number, and courts have found that establishing a hotline does not satisfy the SPOC requirement. *See Johnson v. PNC Mortgage,* 80 F. Supp. 3d 980, 987 (N.D. Cal. 2015) (Pushing borrowers to a hotline, despite having an assigned SPOC, is sufficient to plead a violation of § 2923.7.)  Consequently, SPS cannot retroactively define all of its representatives as a "team" to prevail on this cause of action.

1     Moreover, Defendants' contention that "SPS's representatives accurately and completely

2   walked [Plaintiff] through the loan modification application process even when he refused to

3   engage for months" is similarly unavailing. (*See* Defs.' Mot. at 16-17.)  In order to satisfy the

4   statute, the person with whom the borrower communicates must be "knowledgeable about the

5   borrower's situation and current status in the alternatives to foreclosure process." Cal. Civ. Code §

6   2923.7(e).  As discussed above, the representatives with whom he spoke do not appear to have

7   been knowledgeable about his situation based on the NOS recordation in April 2014.

8     Viewing the evidence in the light most favorable to the nonmoving party, a reasonable

9   inference can be made that not all SPS representatives were team members nor were they

10  knowledgeable about Plaintiff's situation and current status.  Notwithstanding, as discussed below,

11  Plaintiff's claim is moot, because the subsequent review of Plaintiff's loan modification

12  application afforded him the injunctive relief otherwise available for a material violation of

13  HBOR. *See* discussion *infra* Part III.B.i.e.

14          e.   Whether SPS cured any potential HBOR violations

15    Defendants argue that even if they violated HBOR, the staying of the litigation and

16  foreclosure proceedings to afford Plaintiff a subsequent review of a completed modification

17  application constitutes a correction of any violation pursuant to California Civil Code §

18  2924.12(c). (Defs.' Mot. at 11.)  Specifically, § 2924.12(c) provides that "[a] mortgage servicer,

19  mortgagee, trustee, beneficiary, or authorized agent shall not be liable for any violation that it has

20  corrected and remedied prior to the recordation of a trustee's deed upon sale. . . ."  Otherwise, a

21  borrower may obtain injunctive relief for material violations of §§ 2923.55, 2923.6, 2923.7, and

22  2924.17, so long as a trustee's deed upon sale had not been recorded. Cal. Civ. Code § 2924.12(a).

23    At the hearing, Defendants confirmed that the Notice of Trustee's Sale ("NOS"), which

24  Defendants caused to be recorded on April 9, 2014, was never rescinded. (RJN, Ex. 4.)  Moreover,

25  Defendants were unable to provide any legal authority to support the proposition that a subsequent

26  review of a modification application after a lawsuit was filed constituted a complete correction

27  under § 2924.12.  Indeed, the legislative intent in enacting HBOR was to protect borrowers in the

28  wake of the subprime lending crisis by creating a private right of action for violations of the

United States District Court
Northern District of California

1   National Mortgage Settlement, and extend those obligations to all servicers.  It was surely not

2   intended to afford legal protection to lenders and servicers, who flouted the law, only to later

3   engage in potentially sham loan modification application processes after a lawsuit was filed.  To

4   find otherwise would permit a servicer to foreclose on a NOD or NOS that was recorded in

5   violation of HBOR.

6          Notwithstanding, since a trustee's deed upon sale has not been recorded, the only relief

7   available for material violations of §§ 2923.6 and 2923.7 is injunctive relief.  During the stay of

8   litigation, the NOS expired, because more than one year has passed since its recordation.  Thus,

9   Defendants cannot foreclose on the defective and expired NOS, rendering this tantamount to

10  injunctive relief.  HBOR's legislative history indicates that injunctive relief was intended to result

11  in the lender's compliance with the statutory scheme. *Monterossa v. Superior Court of*

12  *Sacramento Cty.*, 237 Cal. App. 4th 747, 754, 188 Cal. Rptr. 3d 453, 458 (2015), reh'g denied

13  (July 6, 2015)("Under this unique statutory scheme, in many cases, the best a plaintiff can hope to

14  achieve is a preliminary injunction.")  It follows that awarding attorneys' fees for injunctive relief,

15  "furthers the legislative purpose of ensuring borrowers have a meaningful opportunity to

16  participate in available loss mitigation options." *Id.* at 757.  Thus, while Plaintiff no longer

17  requires injunctive relief to postpone a sale based on the expired NOS, he could be considered a

18  prevailing party for the purposes of a motion for attorneys' fees. *See Pearson v. Green Tree*

19  *Servicing, LLC*, No. 14-CV-04524-JSC, 2014 WL 6657506, at *3 (N.D. Cal. Nov. 21,

20  2014)(plaintiff was prevailing party under § 2924.12(i) when injunctive relief was later mooted by

21  lender's filing of a notice of rescission).  To find otherwise, would permit lenders to violate the

22  statute with impunity only to later correct its violations as a litigation tactic after a lawsuit is filed.

23  While fixing mistakes should be encouraged, it should not be a shield to paying attorneys' fees to

24  plaintiff's counsel, who filed the meritorious claim, even if an injunction is not formally obtained.

25          Furthermore, any violation of § 2923.7 is similarly mooted, because Plaintiff obtained a

26  subsequent review of his modification application during the stay in the litigation, resulting in

27  effectively obtaining injunctive relief. *See Pearson*, 2014 WL 6657506, at *4; *see also*

28  *Monterossa*, 237 Cal. App. 4th at 754.  This may also serve as grounds for obtaining prevailing

United States District Court
Northern District of California

18

party status. *See* Cal. Civ. Code § 2924.12(i).

Thus, while the §§ 2923.6 and 2923.7 causes of action are effectively mooted by the subsequent review of Plaintiff's loan modification, the staying of litigation, during which time the NOS expired, could be grounds for granting Plaintiff prevailing party status for the purposes of a future motion for attorneys' fees.

### ii. Negligence

Plaintiff's fifth cause of action is for negligence. Under California law, to prove negligence a plaintiff must plead and prove: (1) defendant's legal duty of care toward plaintiff, (2) defendant's breach of that duty, (3) damage or injury to plaintiff, and (4) a causal relationship between defendant's negligence and plaintiff's damages. *Palm v. United States*, 835 F. Supp. 512, 520 (N.D. Cal 1993). Generally, lenders do not owe borrowers a duty of care unless their involvement in the loan transaction exceeds the scope of their "conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095–96 (1991); *see also Rijhwani v. Wells Fargo Home Mortgage, Inc.*, C 13-05881 LB, 2014 WL 890016, at *14 (N.D. Cal. Mar. 3, 2014). Federal district courts in California are divided on when lenders owe a duty of care to borrowers in the context of the submission of loan modification applications and negotiations related to loan modifications. *See Rijhwani*, 2014 WL 890016, at *15-16; *see also Penermon v. Wells Fargo Bank, N.A.*, 47 F. Supp. 3d 982, 1001 (N.D. Cal. 2014).

### a. Duty

Defendants contend that they did not owe a duty to Plaintiff. (Defs.' Mot. at 18-19). The district court cases cited in support, however, are not persuasive. Indeed, the undersigned has followed the other line of cases in which Defendants "owed [Plaintiff] a duty to exercise ordinary care in processing [his] loan modification application." *Penermon*, 47 F. Supp. 3d at 1002. In order to determine "whether a financial institution owes a duty of care to a borrower-client," courts must balance the following non-exhaustive factors:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

19

United States District Court
Northern District of California

1    *Nymark*, 231 Cal.App.3d at 1098 (quotation marks and citations omitted).

2         In the processing of a loan modification application, the transaction is unquestionably

3    intended to affect Plaintiff, as the decision would determine whether or not he could keep his

4    home.  Second, the potential harm from mishandling the application is readily foreseeable as it is

5    the loss of an opportunity to keep his home.  Third, the injury to Plaintiff is certain, as Plaintiff

6    would lose the opportunity to potentially modify his loan and his home could be sold.  Fourth,

7    there is a close connection between SPS's conduct of allegedly failing to provide a SPOC,

8    informing him that no more information was needed, and recording the NOS.  Fifth, there is

9    certainly some moral blame that attaches to SPS's conduct of recording the NOS a week after

10   telling Plaintiff that no further information was required.  Sixth, California's enactment of HBOR

11   and the federal government's home owner assistance programs, such as HAMP, shows the

12   existence of the public policy of preventing future harm to borrowers caught in the foreclosure

13   crisis. *See Penermon*, 47 F. Supp. 3d at 1002.  Accordingly, Defendants owed a duty of care of

14   Plaintiff in processing of his loan modification applications.

15                     b.  Breach

16        As for breach, Defendants claim that SPS did not breach any alleged duty, as it made

17   "numerous and timely efforts to contact Plaintiff about his debt and invite applications for loan

18   modification, which Plaintiff ignored for months or over a year." (Defs.' Mot. at 19-20.)  In

19   opposition, Plaintiff argues that anytime Defendants requested documents in support of his loan

20   modification application, he timely submitted each document. (Pl.'s Opp'n at 22 (citing Pl.'s Le

21   Dep., Cho Decl., Ex. 10 at 86:24-87:4, 111:12-112:15).)  Viewing the evidence in the light most

22   favorable to the plaintiff, a dispute exists regarding whether Defendants breached the duty owed.

23                     c.  Causation

24        Defendants argue that Plaintiff lacks evidence of causation, because Plaintiff failed to pay

25   his mortgage and his debts became insurmountable before SPS became his servicer, and it was

26   Plaintiff's failure to respond with information or supply complete documents that compounded the

27   debt. (Defs.' Mot. at 20.)

28        Plaintiff contends that he followed SPS's instructions regarding documentation and that,

20

1   when servicing was transferred to SPS in May 2012, he could have reinstated his loan had he not

2   been informed that he met the criteria for a loan modification. (Pl.'s Opp'n at 23; Le Decl. ¶ 11.)

3   Plaintiff's declaration that his sister-in-law was willing to loan him the funds necessary to reinstate

4   his loan, however, contradicts his sworn deposition testimony that his family was not a source of

5   money to pay down the arrears. (Le Decl. ¶ 11; *but cf.* Defs.' Le Dep. 98:4-99:15.)  A self-serving

6   declaration cannot be used to create a triable issue of fact, and the Court strikes that portion of

7   Plaintiff's declaration. *See* discussion *infra* Part III.C.ii.

8         Additionally, Plaintiff's contention that he pursued modification, in lieu of paying down

9   the debt, based on SPS's representations that he was eligible for a modification is not well taken.

10   The letters clearly state that Plaintiff was only eligible to apply, rather than stating that he was

11   eligible for a modification.  It also does not explain why Plaintiff stopped making regular, monthly

12   payments, an obligation from which he was not relieved during the modification application

13   process.  Thus, this does not satisfy the causation element of the negligence cause of action.

14              d.  Damages

15         Lastly, Defendants argue that Plaintiff fails to provide any evidence in support of his

16   alleged damages, as he has not deposed any witnesses or designated any experts to establish

17   injuries, lost income, or earning capacity. (Defs.' Mot. at 20.)

18         As Defendants have successfully negated the causation element of the negligence cause of

19   action, and Plaintiff has failed to point to any evidence beyond a self-serving declaration in an

20   attempt to create a triable issue of fact, the Court need not address damages, because the motion

21   for summary judgment must be granted as to the fifth cause of action.

22         **iii.   Violation of Business and Professions Code § 17200**

23         Plaintiff's sixth cause of action is for a violation of Business and Professions Code §

24   17200.  Section 17200 concerns unfair competition and prohibited activities and states that "unfair

25   competition shall mean and include any unlawful, unfair or fraudulent business act or practice."

26   Cal. Bus. & Prof. Code § 17200.  Each prong of the UCL is a separate and distinct theory of

27   liability.  *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).  In order to

28   state a claim for UCL, Plaintiff must identify an underlying statute that Defendant violated.  *Ingels*

21

1    *v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060, 28 Cal. Rptr. 3d 933, 938

2    (2005) (no § 17200 liability "for committing 'unlawful business practices' without having violated

3    another law").  A business practice is "unlawful," in violation of the California Unfair

4    Competition Law (UCL), if it violates another state or federal law; the UCL "borrows" violations

5    of other laws and treats them as independently actionable.   *Perea v. Walgreen Co.*, 939 F. Supp.

6    2d 1026, 1040 (C.D. Cal. 2013).

7        Plaintiff alleges that Defendant's violations of California Civil Code §§ 2924.17, 2923.55,

8    2923.6, and 2923.7 constitutes unlawful conduct under California Business and Professions Code

9    § 17200 *et seq.* (FAC ¶¶ 81-84.)

10       Defendant alleges that the UCL claim should be dismissed because Plaintiff relies on

11   defective HBOR claims to support the UCL claim.  (Def.'s Mot. at 20-21.)  Since Plaintiff's third

12   and fourth causes of action have been effectively corrected by the subsequent review of his loan

13   modification application, thereby already affording Plaintiff the injunctive relief to which he was

14   entitled, there is no sufficient statutory basis to bring a UCL claim.  Thus, Defendant's motion for

15   summary judgment as to the UCL claim is granted.

16   **C.   Defendant's Objections to the Declaration of Tuan Anh Le**

17       Defendants raise twelve objections to Plaintiff's declaration. (Defs.' Obj., Dkt. No. 80-1.)

18       **i.   Paragraph 4**

19       Defendant's first objection concerns Paragraph 4, 2:5-9, wherein Plaintiff discussed

20   alleged statements made by former party Bank of America, N.A. in a letter dated August 29, 2009,

21   which was attached as Exhibit 1. (Defs.' Obj. at 1.)  Defendant objects on the grounds that the

22   exhibit is unauthenticated and inadmissible under Federal Rule of Evidence 901, and that the

23   alleged statements made by Bank of America are also inadmissible hearsay under Rule 801.  The

24   Court agrees.  Additionally, the statements are not relevant, because that alleged modification does

25   not concern the remaining defendants.  Defendants objections are sustained, and the Court will not

26   consider Exhibit 1.

27       **ii.   Paragraph 11**

28       Defendants object to Paragraph 11 on three separate grounds. (Defs.' Obj. at 1-3.)

United States District Court
Northern District of California

1        First, Defendants object to Paragraph 11, 3:24, wherein Plaintiff states that "[h]ad

2   Defendants not informed me [in Le Exhibit 6] that I met the criteria for a loan modification," . . . .

3   Defendants contend that this statement violates the "Rule of Completeness," lacks foundation, and

4   misrepresents the content of the SPS letter to which it relates. *Id.* at 2.  Specifically, not only did

5   Plaintiff fail to submit the complete document, the letter does not say that Plaintiff "met the

6   criteria for a loan modification." *Id.*  Rather, it says that he qualified for consideration under a loan

7   modification review program, that "we encourage you to apply" for that program, and that

8   Plaintiff may ultimately not qualify for a modification.  (Le Decl., Ex. 6, ¶¶ 1-2.)  Upon review of

9   the exhibit, Plaintiff's declaration misrepresents the contents of the exhibit, so the objection is

10  sustained.

11       Second, Defendants object to Paragraph 11, 3:24-26, which states that "[h]ad Defendants

12  not informed me that I met the criteria for a loan modification [in Exhibit 6], I would have, and

13  could have, reinstated my loan.  In addition, if my funds were insufficient to reinstate the loan, my

14  sister-in-law, Trang Pham, was willing to loan me the amount necessary to reinstate." (Defs.' Obj.

15  at 3.)  Defendants contend that this statement is irrelevant because, although SPS sent the August

16  6, 2012 letter inviting Plaintiff's application, Plaintiff never submitted the application. (Le Decl.

17  ¶ 11, 4:1-2; Cline Decl. ¶¶ 13-14.)  While not entirely accurate, because Plaintiff submitted a

18  Proof of Income document, he did not submit all of the required documents. (Cline Decl. ¶ 13;

19  Contact History Report at 60.)  Additionally, Defendants contend that Exhibit 6 could not have

20  been what encouraged Plaintiff to not pay his mortgage because he had not paid it for years before

21  the letter was sent. (Defs.' Obj. at 2; Le Decl. ¶ 6.)  Furthermore, as discussed in the preceding

22  paragraph, the letter did not state that Plaintiff qualified for a modification.  Rather, it stated that

23  he qualified to apply for a modification.

24       Lastly, Defendants assert that this is a sham declaration, because it contradicts sworn

25  deposition testimony that Plaintiff could not afford to reinstate his loan, and that neither his

26  partner, nor "family," could help him reinstate his debt because he was "all by himself" in this.

27  (Defs.' Le Dep. 97:18-99:16.)  Indeed, Plaintiff testified that he was "all by himself" when asked

28  if his family could have been a source of money to pay off the arrears in 2012. (Defs.' Le Dep.

United States District Court
Northern District of California

United States District Court
Northern District of California

99:14-15.)  The Court notes that the statement is also objectionable on hearsay grounds.  For these reasons, Defendants' objections are sustained.

Third, Defendants object to Paragraph 11, 4:3-4, which provides that "Defendant SPS failed to make a written determination on the application," on the grounds that the statement lacks relevance and foundation, because Plaintiff did not submit a completed application packet for SPS to issue a determination on. (Le Decl. ¶ 11, 4:1-2; Cline Decl. ¶¶ 13-14.)  This objection is also sustained.

### iii.    Paragraph 12

Defendants object to Paragraph 12 in its entirety on the grounds that it is irrelevant. (Defs.' Obj. at 3.)  Specifically, Defendants argue that the allegations in paragraph 12 are irrelevant because:

> "(1) Plaintiff does not dispute that he disconnected his phone and was not communicating with SPS at the time, *and* he had not submitted a completed application for a loan modification (Cline Decl. ¶ 14; Le Decl. ¶ 11, 4:1-2; *accord* Cline Decl. ¶¶ 13-14), and (2) the law does not prohibit single point of contact re-assignment. Cal. Civ. Code § 2923.7; Fed. R. Evid. 402."

*Id.* The SPOC issue is relevant, even though HBOR does not prohibit reassignment, so the Court overrules the objections.

### iv.    Paragraph 19

Defendants object to Paragraph 19, 6:6-8, in which Plaintiff states that he "submitted a new application reflecting a material change in my income." (Defs.' Obj. at 3.)  Specifically, Defendants object on the grounds that the statement lacks foundation and violates the best evidence rule because Plaintiff has not submitted any documents corroborating an application or its content. *Id.*; Fed. R. Evid. 602, 1001-1002.

A borrower also fails to carry their burden of proof on a claim that they submitted a "complete loan modification application" by only saying they did so.  *Stokes v. CitiMortgage, Inc.*, No. CV 14-00278 BRO SHX, 2014 WL 4359193, at *7 (C.D. Cal. Sept. 3, 2014).  The finding of whether an application is "complete" is a legal determination for the court. *Id.*  Further, the allegation that the change in Plaintiff's income was a "material change" is similarly inadmissible, as Plaintiff lacks the knowledge and qualification to provide this opinion.  Fed. R. Evid. 602, 701.

Defendants' objection is sustained.

### v.   Paragraph 21

Defendants object to Paragraph 21, 6:19-20, in which Plaintiff states that "I sent to Defendant SPS an updated Profit and Loss Statement to appeal the denial of my loan modification." (Defs.' Obj. at 4.)  Defendants contend that the statement lacks foundation and violates the best evidence rule because Plaintiff has not submitted any documents to corroborate an application or its content. *Id.*  Moreover, Defendants object on the grounds that to the extent that the Declaration seeks to introduce the content of the document, that content is inadmissible hearsay under Rule 801.  This is correct.  Thus, Defendants' objections are sustained.

### vi.   Paragraph 23

Defendants object to Paragraph 23, 7:3-5, in which Plaintiff states that ". . . Defendant SPS informed me via a letter that I may resubmit your completed documents in lieu of your appeal by 01/19/2014, and SPS will re-evaluate it." (Defs.' Obj. at 4.)  Defendant objects on the grounds that the statement lacks authenticity, foundation and violates the best evidence rule and "Rule of Completeness" where Plaintiff only offered an alleged quote from the document rather than providing the letter as an exhibit. *Id.*  This objection is well taken, particularly given that Plaintiff chose to quote from the letter itself.  At the hearing, Plaintiff's counsel explained the same language was contained in a subsequent letter.  This is not sufficient.  Thus, Defendant's objections are sustained.

### vii.   Paragraph 25

Defendants object to Paragraph 25, 7:15-16, in which Plaintiff states that "I submitted a new profit-and-loss statement, which stated a material change in income from the previous loan modification application." (Defs.' Obj. at 4.)

Defendants object on various grounds, including that the statement lacks foundation, violates the best evidence rule where Plaintiff has not submitted any documents to corroborate the purported application or its content, and is inadmissible hearsay. *Id.*  Furthermore, a borrower fails to carry their burden of proof on a claim that they submitted a "complete loan modification application" by only saying they did so. *Id.* at 4 (citing *Stokes v. CitiMortgage, Inc.*, No. CV 14-

00278 BRO SHX, 2014 WL 4359193, at *7 (C.D. Cal. Sept. 3, 2014)).  The allegation that the content of the application amounted to a "material change" is inadmissible for the same reasons set forth *supra* Part III.C.iv.

Therefore, Defendants' objections are sustained.

### viii.    Paragraph 26

Defendants object to Paragraph 26, 7:19-20, 21-22, 25-27, and Exhibit 20. (Defs.' Obj. at 5.)  Defendants object to Exhibit 20 on the grounds that it lacks foundation and misstates evidence, because it is a fax cover sheet that states that a hardship letter is attached rather than a "true and correct copy of the fax sent to SPS on or around March 3, 2014," "thereby completing my loan modification application." *Id.*  The Court agrees, because Exhibit 20 does not show that Plaintiff submitted any documents. Rather, it shows that he faxed a cover sheet, which was one of two pages sent during the facsimile transmission. (Le Decl., Ex. 20.)

Moreover, each of the citations referenced in this objection claiming that Plaintiff: "submitted all of the requested documents," "had already submitted the documents," "sent in the requested materials," and "immediately sent in a hardship letter to Defendant SPS on the same day, thereby completing my loan modification application as of March 3, 2014," are objected to on the grounds that the statements  lack foundation and violate the best evidence rule where Plaintiff has not submitted any documents corroborating an application or its content. (Defs.' Obj. at 5.) As discussed above, the finding of whether an application is "complete" is a legal determination for the court. *See* discussion *supra* Part III.C.iv.  Therefore, Defendants' objections are sustained.

### ix.    Paragraph 28

Defendants object to Paragraph 28, 8:3-5, in which Plaintiff states that "[a]lthough I had yet to receive a determination on my complete loan modification application. . . ." (Defs.' Obj. at 5.)

Defendants object on the grounds that the statement lacks foundation and comprises a self-serving legal opinion concerning "completeness of an application" that Plaintiff is not qualified to give, and the determination of whether a loan modification application is "complete" is a legal determination for the court.  *Id.*  This is correct, so Defendants' objection is sustained.

1

                    x.      **Paragraph 30**

2          Defendants object to Paragraph 30 in its entirety on the grounds that the allegations "all

3   concern Plaintiff's conclusory opinion on 'causation' of damages and the legal conclusion of

4   'misconduct' by 'Defendants' (without specifying which originally-named Defendant, including

5   one that has been dismissed, is the cause of what harm)." (Defs.' Obj. at 6.)  This is an improper

6   legal conclusion, so Defendants' objection is sustained.

7                          **IV.    CONCLUSION**

8          In light of the foregoing, Plaintiff's request for judicial notice is GRANTED.

9          Furthermore, Defendants Select Portfolio Servicing, Inc. and Bank of New York Mellon's

10  motion for summary judgment is GRANTED.  Plaintiff Tuan Anh Le has failed to set forth

11  sufficient facts through admissible evidence showing that there is a genuine issue of material fact

12  for trial as to the first, second, and fifth causes of action.  Plaintiff's third, fourth, and sixth causes

13  of action were mooted by the subsequent review of Plaintiff's loan modification application,

14  which afforded Plaintiff with the injunctive relief to which he was entitled under HBOR.

15         Additionally, as set forth above, Defendants' objections to Plaintiff's declaration are

16  SUSTAINED IN PART AND OVERRULED IN PART.

17         IT IS SO ORDERED.

18  Dated: December 23, 2015

19                                          _____

20                                          KANDIS A. WESTMORE
                                           United States Magistrate Judge

21

22

23

24

25

26

27

28

United States District Court
Northern District of California